IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

DEBBIE ZAMPRELLI,

       Plaintiff,

v.                                                 No. CIV 00-181 BB/RLP

AMERICAN GOLF CORPORATION, a
foreign corporation d/b/a Paradise Hills
Golf Club, and WILLIAM WINKLER, an
individual,

       Defendants.

MEMORANDUM OPINION
AND
ORDER ON SUMMARY JUDGMENT

THIS MATTER is before the Court on Defendants' motion for summary judgment. The Court, having studied the materials and briefs submitted by the parties, finds the motion should be Granted in Part and Denied in Part.

*Discussion*

I.    *Standard of Review*

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©); *Quaker State Minit-Lube v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995). When applying this standard, a court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The evidence will be considered under those standards.

II.     <u>Facts</u>

Plaintiff Debbie Zamprelli was hired by American Golf Corporation (the "Corporation") as a teaching professional at Paradise Hills Country Club in September 1997. Shortly after being hired, Plaintiff was promoted to Head Golf Professional. According to Ed Drangmeister, one of her subordinates, Plaintiff was good at her job, well liked, and capable of performing successfully as the head pro.

In August 1998, Defendant William Winkler became General Manager of Paradise Hills County Club. Shortly thereafter, he informed Plaintiff he did not think she had the qualifications to be the head pro and would be better qualified

as a teaching pro. Plaintiff testified Mr. Winkler also told her the club members wanted a club pro they could go to a local strip club with.

Plaintiff has testified that Mr. Winkler treated her differently than the male department heads in that:

1. He only met with the employees under her supervision, criticized Plaintiff, and asked them for negative information on her performance.

2. Mr. Winkler scheduled appointments and discussed their employment evaluations with the other department heads but after several requests gave her only a partial evaluation.

3. He subjected only Plaintiff to the requirement she report to him before she played golf.

4. Ms. Zamprelli was required to be on the premises 55 hours a week; the males were not.

Plaintiff concluded Mr. Winkler was taking over her department and he became increasingly hostile when she attempted to talk to him about it. When Plaintiff attempted to report Mr. Winkler's "harassment" to his superior, Bret Martin, under the Corporation's "we can work it out plan," Mr. Martin failed to return repeated calls. However, Mr. Martin talked to Mr. Winkler who told

Plaintiff that Mr. Martin did not want to talk to her. Ms. Zamprelli tried to reach Mr. Martin twice on December 17, 1998. When she could not talk to Mr. Martin, Ms. Zamprelli concluded the company would not follow through on it's policy to help employees "work it out" and she had no other choice but to resign. Plaintiff and Mr. Winkler then had a meeting wherein Plaintiff stated she wanted to resign her position as the Head Golf Professional but continue as a teaching professional under an independent contractor agreement. Plaintiff informed Mr. Winkler that her last day at work would be January 1, 1999. Plaintiff also informed two other employees that she was "quitting."

Sometime in early January 1999, Plaintiff, doing business as Logical Golf, submitted what she termed an "Independent Contractor Proposal" to the Corporation. In response, Plaintiff received a letter from Mr. Winkler setting out conditions under which Plaintiff could work as an independent contractor. Plaintiff signed the letter on January 21, 1999.

III.   *Title VII Claims*

   A.   *Hostile environment*

Plaintiff alleges sex discrimination based on a hostile environment. In order to establish a prima facie case, Plaintiff must demonstrate that she (1) belongs to a protected class; (2) was adversely affected by an employment decision; (3)

**qualified for her position; and (4) was treated less favorably than her male counterparts.** *See Cole v. Ruidoso Mun. Sch.*, **43 F.3d 1373, 1380 (10th Cir. 1994). Defendants do not dispute that Plaintiff is a member of a protected class nor that Plaintiff was qualified for her position. Rather, they maintain Plaintiff has failed to show she suffered an adverse employment action or that Plaintiff was treated less favorably than her male counterparts.**

**"To establish her claim, plaintiff must show both that the conduct to which she was subjected was 'severe or pervasive enough to create ... an environment that a reasonable person would find hostile or abusive,' and that she 'subjectively perceived the environment to be abusive.'"** *Wright-Simmons v. City of Oklahoma City*, **155 F.3d 1264, 1269 (10th Cir. 1998) (quoting** *Harris v. Forklift Sys., Inc.*, **510 U.S. 17, 21 (1993)). "Hostile environment harassment occurs where a supervisor or co-worker's conduct unreasonably interferes with an individual's work performance or creates an intimidating, hostile, or offensive work environment."** *Wright-Simmons*, **155 F.3d at 1269.**

**A constructive discharge is not a separate cause of action but is properly analyzed under the adverse employment action required to sustain a Title VII claim.** *Knabe v. Boury Corp.*, **114 F.3d 407 (3d Cir. 1997);** *Brock v. United States*, **64 F.3d 1421, 1423-4 (9th Cir. 1995). Plaintiff must show, then, not only that**

conditions were intolerable, but that she was forced to resign because of unlawful discrimination. *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 886 (7th Cir. 1998). In such a context constructive discharge may be a tangible job detriment. *See Mallinson-Montague v. Pocrnick*, 224 F.3d 1224, 1231 (10th Cir. 2000); *West v. Marion Merrell Dow, Inc.*, 54 F.3d 493, 497 (8th Cir. 1995).

While Plaintiff's evidence is hardly overwhelming, Defendant Winkler's constant criticism of Plaintiff along with the increase in her work hours and performance requirements could support a jury finding the work environment hostile and abusive. *Fitzgerald v. Henderson*, 251 F.3d 345, 363-4 (2d Cir. 2001); *Williams v. General Motors Corp.*, 187 F.3d 553, 563 (6th Cir. 1999). Plaintiff's testimony that she was "in tears" after her encounters with Mr. Winkler indicates her subjective belief the environment was hostile.

When the harasser is a supervisor, and the plaintiff suffers a tangible job detriment, the employer may be held liable under Title VII. *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). Therefore, because there is evidence Plaintiff was harassed by her superior and suffered a tangible job detriment, at this stage American Golf cannot escape liability for the hostile work environment. *Id.*

**B.    *Retaliation***

To establish a prima facie case on retaliation, Plaintiff is required to show: (1) that she engaged in an activity protected by Title VII; (2) that she was subjected to an adverse employment action; and (3) that a causal connection exists between the adverse employment action and her protected activity. *See Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 857 (10th Cir. 2000). Viewed most favorably to Plaintiff, the record shows only that:

1. When Plaintiff complained to Mr. Winkler regarding his "clandestine" communications with "her staff" he said "if you don't like it, leave" and threatened to implement a performance improvement plan.

2. "Ms Zamprelli <u>felt</u> that Winkler's treatment of her amounted to discrimination and harassment." (Pl. Resp. Br. at 6) (emphasis added).

3. Plaintiff tried to resolve matters under the Corporation's "we can work it out" plan and Defendant Winkler told her to leave his office and yelled and screamed at her" (*Id.*)

4. Mr. Winkler's supervisor, Mr. Martin, never returned Plaintiff's calls.

**Based on this evidence, Plaintiff fails to meet virtually every element required to sustain a retaliation claim. First, she never complained of sexual discrimination, only of bad business practices and poor communications.** *See Robbins v. Jefferson County Sch. Dist.*, **186 F.3d 1253 (10th Cir. 1999);** *Galdieri-Ambrosini v. National Realty & Dev. Corp.*, **136 F.3d 276 (2d Cir. 1998). Since Plaintiff never complained to Mr. Winkler of sexual harassment whatever actions he took cannot be found to be in retaliation for complaints of which he was unaware.** *Sanchez v. Denver Pub. Sch.*, **164 F.3d 527, 533-4 (10th Cir. 1998). Based on these facts, Plaintiff has failed to prove the requisite "causation."** *Causey v. Balog*, **162 F.3d 795, 803 (4th Cir. 1998). Even if Plaintiff's claim that her attempts to reach Mr. Martin and implement the "we can work it out program" somehow implicated a sexual discrimination claim, Mr. Winkler's response of anger and yelling are insufficient adverse action.** *Fortner v. Kansas*, **934 F. Supp. 1252, 1268 (D. Kan. 1996),** *aff'd*, **122 F.3d 40 (10th Cir. 1997);** *Munday v. Waste Mgmt.*, **126 F.3d 239, 243 (4th Cir. 1997).**

**IV.**     <u>*Intentional Infliction of Emotional Distress*</u>

**To establish intentional infliction of emotional distress, a plaintiff must demonstrate: (1) the tortfeasor acted intentionally or recklessly; (2) the tortfeasor's conduct was extreme and outrageous; and (3) plaintiff actually**

8

**experienced severe emotional distress.** *Nieto v. Kapoor*, **182 F. Supp. 2d 1114 (D.N.M. 2000). In order to prevail, a plaintiff must allege behavior so outrageous as to go beyond the bounds of decency.** *Glasgow v. Eagle Pac. Ins. Co.*, **45 F.3d 1401, 1409 (10th Cir. 1995). It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.** *Gioia v. Pinkerton's, Inc.*, **194 F. Supp. 2d 1207 (D.N.M. 2002);** *Salazar v. Furr's, Inc.*, **629 F. Supp. 1403, 1411 (D.N.M. 1986). The conduct alleged by Plaintiff falls far short of the level of that required.** *See Morris v. Oldham County Fiscal Court*, **201 F.3d 784, 795 (6th Cir. 2000);** *Gioia*, **194 F. Supp. 2d at 1220;** *Rodriguez v. America Online, Inc.*, **183 F. Supp. 2d 1340 (D.N.M. 2001);** *Trujillo v. Northern Rio Arriba Elec. Coop*, **41 P.3d 333 (N.M. 2001);** *Silverman v. Progressive Broadcasting, Inc.*, **964 P.2d 61 (N.M. App. 1998). Moreover, Plaintiff has not brought forward evidence of <u>severe</u> emotional distress. Being upset and crying at work hardly qualify.** *Gioia*, **194 F. Supp. 2d at 1220-1.**

**V.**     <u>**Tortious Interference with Business Relations**</u>

   **A.**     <u>*Facts*</u>

**After Plaintiff left Defendants' employment, at least one person was told that Ms. Zamprelli had left without telling anyone, leaving the Club in a real bind.**

9

**Mr. Winkler admitted employees in the pro shop were instructed to tell people that Ms. Zamprelli no longer worked there and they did not know how to get in touch with her. Employees were instructed to tell callers to look up her number in the book. (Other former employees' telephone numbers or contact information was given to callers.) Plaintiff also testified Mr. Winkler or Mr. Brazil threw away the business cards she left in the pro shop so people could contact her regarding golf lessons.**

**Plaintiff was upset about the misinformation being given out about her and called Mr. Martin and left a message on January 8, 1999. She also contacted Russ Jensen (a Corporate manager for the region). Mr. Jensen told her to call him back and leave a voice mail that he would forward to Mr. Martin. She said in the message that Mr. Winkler had forced her out as head pro and now he was interfering with her ability to make a living.**

**Ms. Zamprelli attempted to teach lessons at Paradise Hills until January 10, 1999, when Mr. Winkler sent someone to call her off the course. Mr. Winkler told Plaintiff she was not allowed on the premises until the "paperwork" was completed and she provided proof of liability insurance. Plaintiff was also limited to three students at a time and was required to give at least 24 hours notice before**

coming on the premises to teach. She testified these conditions for teaching lessons independently were different than those imposed on other teaching pros.

    B.    *Law*

The tort requires a plaintiff to prove that a defendant improperly interfered with the plaintiff's contractual relations, either through improper means or improper motive, and this interference played a substantial role in causing Plaintiff to lose the benefits of the contract. *Id.; see also Santa Fe Technologies v. Argus Networks*, 42 P.3d 1221, 1235 (N.M. App. 2001). The purpose of this tort is to "impose liability for contractual interference when the means of interfering was not tortious or otherwise unlawful in itself." *Id.* (quoting *Diversey Corp. v. Chem-Source Corp.*, 965 P.2d 332, 339 (N.M. App. 1998)).

"Establishing tortious interference with contract is not easy." *Ettenson v. Burke*, 17 P.3d 440, 446 (N.M. App. 2000). However, at this preliminary stage, Plaintiff has adduced sufficient evidence to create issues of material fact on this claim. *See Diversey*, 965 P.2d at 339; *Spear v. Cimosz*, 642 P.2d 205 (N.M. App. 1982).

## VI. *Prima Facie Tort*

To state a claim of *prima facie* tort, Plaintiff must allege: (1) an intentional but lawful act by Defendants; (2) an intent to injure Plaintiff; (3) injury to Plaintiff as the proximate cause of the act; and (4) the absence of justification or insufficient justification for Defendants' acts. *Hill v. Cray Research, Inc.*, 864 F. Supp. 1070, 1078 (D.N.M. 1991); *Schmitz v. Smentowski*, 785 P.2d 726, 734 (N.M. 1990). Any intent to harm must be balanced against Defendants' justification considering: (1) the nature and the seriousness of the harm; (2) the interests advanced by Defendants' conduct; (3) the fairness or unfairness of the means used by Defendants; and (4) Defendants' motives. *See Ewing v. State Farm Mut. Auto Ins. Co.*, 6 F. Supp. 2d 1281, 1291 (D.N.M. 1998).

Under New Mexico law, a *prima facie* tort will not be permitted to duplicate or remedy a defect in another established cause of action. *Schuler v. McGraw-Hill Cos.*, 989 F. Supp. 1337 (D.N.M. 1997), *aff'd*, 145 F.3d 1346 (10th Cir. 1998); *Hill v. Cray Research, Inc.*, 64 F. Supp. 2d at 1079. Therefore, courts must carefully monitor this cause of action to insure it is not merely duplicative of other claims or used as a "fail-safe" in the event that there is no finding of liability under one or more traditional causes of action. *Id*.

**Plaintiff's *prima facie* tort fails because under no set of circumstances can Plaintiff satisfy the essential elements of this tort. If, as Plaintiff alleges, her forced resignation was in breach of Title VII or resulted in a tortious retaliatory discharge and is therefore an act that was unlawful, the first element of a *prima facie* tort (a lawful act) is not met. *See Lopez v. Garcia*, 1 F. Supp. 2d 1404 (D.N.M.), *aff'd*, 145 F.3d 1346 (10th Cir. 1997). Moreover, as the discussion of her Title VII and tortious interference with business claims demonstrate; she has other legal remedies and this claim is being used merely as a fail-safe. Summary judgment is thus appropriate.**

## O R D E R

**For the above stated reasons, Defendants' motion as to summary judgments on Plaintiff's claims for retaliation and *prima facie* tort are GRANTED. Defendants' motion for summary judgment on Plaintiff's claims for hostile work environment and tortious interference with business relations are DENIED.**

**Dated at Albuquerque this 6th day of January, 2003.**

_____
**BRUCE D. BLACK**
**United States District Judge**

13

**For Plaintiff:**
    **Christopher Moody, N**OEDING **& M**OODY**, Albuquerque, NM**
    **Wayne C. Wolf, Albuquerque, NM**

**For Defendants:**
    **Martin R. Esquivel, D**INES **G**ROSS **& E**SQUIVEL**, Albuquerque, NM**